-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SERGIO PERRILLA,

        Plaintiff,

        -v-

**DECISION AND ORDER**
13-CV-0398M

BRIAN FISCHER, Commissioner, NYS DOCCS;
KAREN BELLAMY, C.O.R.C. Coordinator;
P. GRIFFIN, Superintendent, Southport Correctional Facility;
IMAN AFFY, Iman of Southport Correctional Facility;
T. MEEKER, Food Service Administrator,
Southport Correctional Facility; and
I.G.R.C., Southport Correctional Facility,

        Defendants.

---

## INTRODUCTION

Plaintiff, Sergio Perrilla, currently an inmate at the Mid-State Correctional Facility, initially commenced this *pro se* action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of New York alleging a denial of his First Amendment Free Exercise rights while he was incarcerated at the Southport Correctional Facility. Because the events alleged in the complaint occurred within this District and the defendants most likely resided in this District, see 28 U.S.C. § 1391(b), the Northern District transferred the action to this District. (Docket No. 7, Decision and Order.) Plaintiff also sought permission to proceed *in forma pauperis* and filed a Prison Authorization. (Docket Nos. 2, 4

and 5.) For the following reasons, plaintiff's motion to proceed as a poor person is granted and some of claims alleged in the complaint are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), for their failure to state a claim upon which relief can be granted, and the remainder of the complaint will be dismissed unless plaintiff files an amended complaint as directed below. .

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*. Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); see also *Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir 2008) (discussing pleading standard in *pro se* cases after *Twombly*; "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam* )).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its evaluation of the complaint, the Court finds that several of plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may be granted.

### A. PLAINTIFF'S CLAIMS

Plaintiff alleges that on or about June 26, 2011, he forwarded a letter to defendant Iman Affy at Southport asking to be placed on the list for Ramadan Muslim Observance Services. (Complaint, ¶ 1, Exh. A.) On or about June 28, 2011, he received a memorandum from defendant Meeker, Southport's Food Service Administrator, informing inmates that Ramadan Observance Meals would begin on August 1 and that the last meal would be served on August 14, 2011. (*Id.*, ¶ 2, Exh. B.) On September 1, 2011, plaintiff wrote to Iman Affy and informed him that he had spoken to defendant Superintendent Grffin regarding why his "Shawwal Meal" had been discontinued and was advised by Griffin to contact the Iman. On that same date, plaintiff filed a grievance complaining that he had told Iman Affy that he wanted to attend Ramadan Services but was advised he could not pursuant to New York State Department of Corrections and Community Supervision Directive No. 4933, 7 N.Y. Comp. R. & Regs §304.9, which prohibits inmates confined in SHU from participating in congregate religious services. (*Id.*, ¶¶ 3-4, Exhs.C, D.)

In September 2011, plaintiff filed two additional grievances, SPT-52336-11 (Grievance I") and SPT-52337-11 ("Grievance II"). Grievance I alleged that plaintiff's right to be provided Halal food during Ramadan to break his fast was denied when Meeker and Iman Affy did not provide him with "double portions" as set forth in the Ramadan Menu and oatmeal in the Sahoor bags, and that the

evening meal during Ramadan was "ill[-]prepared" and served by non-believers. (Complaint, ¶¶ 5,10, Exh. E, J.) He also claims that when the meal was prepared by believers, the chicken and fish was "unclean, filthy and raw (not coooked peroperly)." (*Id.*, Exh. E.) The Inmate Grievance Review Committee ("IGRC") granted Grievance I in part "to the extent that per religious staff Muslim and NOI [Nation of Islam] inmates cooked and prepared Ramadan food. All food and meals served were in accordance with the Statewide Menu . . . All meals were supervised by staff and prepared properly." (*Id.*, Exh. J.) Superintendent Griffin concurred with the IGRC's decision and affirmed the recommendation of the IGRC. (*Id.*)

The Second Grievance complained that plaintiff was not permitted to attend congregate services during Ramadan pursuant to DOCCS Directive 4933, 7 NYCRR § 304.9(d),[1] which provides that individuals in SHU are not permitted to attend congregate religious services. (Complaint, ¶¶ 7-10, Exhs. G-I). Accommodations are provided in the form of counseling by the facility's ministerial staff and a rounding in SHU by the facility senior chaplain or a

---

[1]Directive 4933, which applies only SHU inmates, provides:

(a) Counseling by a member of the facility's ministerial services staff will be provided upon written request of an inmate.

(b) The facility senior chaplain or a designated member of the ministerial services staff will be required to make a minimum of one round per week in SHU.

(c) No inmate religious advisor or assistant will be permitted to visit SHU.

(d) Attendance at congregate religious services will not be permitted.

5

designee at least once per week. *Id.* The Grievance was denied by the IGRC pursuant to Directive 4933, and the denial was affirmed by Griffin and the Central Review Office Committee. (*Id.*)

Plaintiff's claims are brought solely under the First Amendment[2] and are brought against Brian Fischer, Commissioner; Karen Bellamy, CORC Director; P. Griffin, Superintendent at Southport; Iman Affy; Meeker; and Southport's IGRC Coordinator. Plaintiff seeks compensatory and punitive damages in separate amounts against each of the defendants. For the following reasons, the Court finds that (1) plaintiff's claims related to the denial of his request to attend congregate religious services must be dismissed with prejudice for their failure to state a claim upon which relief can be granted, (2) plaintiff's claims against defendants Fischer, Bellamy, Griffin and the IGRC Coordinator related to the alleged denial and preparation of Halal Meals must be dismissed with prejudice for their failure to state a claim upon which relief can be granted, and (3) plaintiff's claims against Iman Affy and Meeker <u>only</u> related to the alleged denial and

---

[2] The Court notes that liberally construing the complaint, as the Court must, *see Norfleet v. Walker*, 684 F.3d 688, 2012 WL 2520465, at *1 (7th Cir.2012) ("courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds, especially when he is litigating pro se") (citations omitted), the facts alleged could also be construed to support a claim under the Religious Land Use and Incarcerated Persons Act of 2000, 42 U.S.C. § 2000cc-1(a). However, plaintiff is seeking only compensatory and punitive damages which are not available under RLUIPA. *Ford v. Palmer*, --- Fed.Appx. ----, 2013 WL 5340395, n.1 (2d Cir. Sept. 24, 2013) (Summay Order) ("RLUIPA does not provide a cause of action for damages against state officials in their official capacities, *see Sossamon v. Texas*, 131 S. Ct. 1651 (2011), or in their individual capacities, *see Washington v. Gonyea*, No. 11-980-cv 2013 WL 4792375, at *2 (2d Cir. Sept. 10, 2013) (per curiam))." Accordingly, to the extent the complaint could be construed to allege claims under RLUIPA they would be dismissed.

preparation of Halal Meals must be dismissed unless he files an amended complaint which includes the necessary allegations regarding said claims.

### 1. Congregate Religious Services

Plaintiff alleges that he was denied the right to attend congregate religious services during the Holy Month of Ramadan in 2011 and was advised by Iman Affy that pursuant to Directive No. 4933 he could not attend congregate religious services. Plaintiff also was not permitted to attend Jumah and Eid-ul-Fiter Services. (Complaint, ¶ 4, Exh. D.) While it has been held that the First Amendment does provide inmates the right to participate in congregation religious services "under most circumstances," *Johnson v. Guiffere*, 2007 WL 3046703, at *4 (N.D.N.Y., Oct. 17, 2007) (citing *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993), the right is not unfettered and must "be balanced against legitimate penological concerns." *Washington v. Afify*, — F.Supp.2d —, 2013 WL 4718693, at 6 (W.D.N.Y., Sept. 3, 2013).

"[I]t is well-established [in this Circuit] that the enforcement of DOCS policies which restrict inmates in SHU from attending congregate religious services 'is rationally related to a valid penological interest and is the least restrictive means of serving that interest.' " *Leon v. Zon*, 920 F.3d 379, 386 (W.D.N.Y. 2013) (quoting *Smith v. Artus*, 2010 WL 3910086 at *23 (N.D.N.Y.2010), *vacated on other grounds* 2013 WL 1338359, at n.1 (2d Cir. Apr.

4, 2013);[3] *see also Washington*, 2013 WL 4718693, at 6 ("In *Smith v. Artus* . . . the court, though recognizing that 'a prisoner's free exercise right to participate in religious services is not extinguished by his or her confinement in special housing or keeplock,' granted summary judgment for the defendants on the plaintiff's claim challenging a directive that SHU inmates could not attend congregate religious services, finding that the directive had valid, rational connection to the legitimate penological interest of security, staffing, and the preservation of scarce fiscal resources.) (citing *Smith v. Artus*, 2010 WL 3910086, at *31).

Accordingly, plaintiff's claims alleging that he was denied his First Amendment right to attend congregate religious services must be dismissed with prejudice. *See Washington*, 2013 WL 4718693, at 7.

### 2. Denial of and Ill-Prepared Halal Meals

Plaintiff also claims that during Ramadan 2011, he was not provided Halal[4] food to break fast and that the evening meal was prepared by non-believers and that when it was prepared by believers it was ill-prepared—"unclean, filthy, and

---

[3]The Second Circuit, on appeal vacated the district court's decision on other grounds, noting that the portion of the district court's decision addressing the religious-services issue "remain[s] undisturbed by this order." *Smith v. Artus*, 2013 WL 1338359, at n. 1.

[4]As summarized by one district court the Muslim Halal dietary requirement is as follows: "[T]he Koran dictates that practicing Muslims eat food that is Halal, which means allowed or lawful. The opposite of Halal is Haram, which means prohibited or unlawful. A Halal diet includes fruits, vegetables and all things from the sea. The flesh of herbivorous animals, such as cows, lambs, chickens and turkeys, is Halal if it is slaughtered with the appropriate prayer and in the appropriate manner. Certain items are Haram and cannot be made Halal through ritual slaughter. Examples of such Haram items include pork and all pork by-products, carrion and the flesh of carnivorous animals, such as cat, dog, rat, lion, tiger, and eagle. Intoxicants of all types are also Haram. Halal does not require separate preparation and serving facilities after Halal meat is slaughtered according to ritual." *Cox v. Kralik*, 2006 WL 42122, at *1, n.1 (S.D.N.Y., Jan. 6, 2006) (citing *Abdul-Malik v. Goord*, 1997 WL 83402, at *1 (S.D.N.Y. Feb. 27, 1997)).

raw . . . ." (Complaint, ¶ 5, Exh. E.) Grievance I claimed that Iman Affy and Meeker did not comply with the Ramadan Menu distributed previously (*id.*, ¶ B) inasmuch as he was not provided double portions nor was he provided with oatmeal in his Sahoor bags (*id.*, Exh. E). The Grievance was granted in part "to the extent that per religious staff Muslim and NOI [Nation of Islam] inmates cooked and prepared Ramadan food. All food and meals served were in accordance with the Statewide Menu . . . All meals were supervised by staff and prepared properly." (*Id.*, Exh. J.) Superintendent Griffin concurred with the IGRC's decision and affirmed the recommendation of the IGRC. (*Id.*, ¶ 10, Exh. J.)

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estates of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). Those protections, however, "are not as extensive as the rights enjoyed by an ordinary citizen. Rather, '[a] prison inmate ... retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' " *Washington*, 2013 WL 4718693, at *4 (quoting *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir.2004) (quoting *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir.1995), and citing *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir.2003) ( "Balanced against the constitutional protections afforded prison inmates, including the right to free

exercise of religion, ... are the interests of prison officials charged with complex duties arising from administration of the penal system") (internal quotation marks and brackets omitted)).

Whether a restriction on a prisoner's religious practices is constitutional under the First Amendment, is determined by a standard of reasonableness. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990). *See also Ford*, 352 F.3d 588 ("The free exercise claims of prisoners are therefore judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights") (additional internal quotation marks omitted). "Under the First Amendment . . . a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests.' " *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir.2010) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). In order to establish a violation of the First Amendment a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salhuddin*, 467 F.3d at 274–75 (citation omitted). Restrictions on an inmate's free exercise rights are only permissible where they are "reasonably related to legitimate penological interests." *Pugh v. Goord*, 571 F.Supp.2d 477, 494 (S.D.N.Y.2008) (quoting *Turner v. Safley*, 482 U.S. 78, 87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). "An individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as

a prison regulation denying such exercise." *Salahuddin*, 467 F,3d at 276, n.4 (citing *Ford*, 352 F.3d at 595, n.15 (citing *Young v. Couglin*, 866 F.2d 567 (2d Cir. 1989)).

The Second Circuit has stated that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples. . . ." *Ford*, 352 F.3d at 597 (citations omitted). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith ... unconstitutionally burden[s] their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir.2004). However, "[t]here may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored." *Tafari v. Annets*, 2008 WL 2413995, at *16 (S.D.N.Y. June 12, 2008) (quoting *McEachin*, 357 F.3d at 203 n. 6). "In this respect, this area of the law is no different from many others in which the time-honored maxim *de minimis non curat lex* applies." *McEachin*, 357 F.3d at 203 n. 6. *See also Norwood v. Strada*, 249 F. App'x. 269, 272 & n. 1 (3d Cir.2007) (denial of religiously certified "halal" meals on seven out of seven occasions, during prison's two-and-one half-day emergency lock-down, was "a mere *de minimis* intrusion" that failed to substantially burden the inmate's religious beliefs); *Brown v. Graham*, 2010 WL 6428251, at *15-16 (N.D.N.Y., March 30, 2010) (collecting cases finding *de minimis* burden on inmate's free exercise rights); *Tafari*, 2008 WL 2413995, at *16 (denial of Kosher meals on a

few separate occasions "did not substantially burden [Plaintiff's] religious beliefs and constituted, at most, a *de minimis* violation.")

Plaintiff's complaint and the attached Grievances[5] do not allege a plausible claim for relief, see *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (In order to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), that the denial of double portions to break fast and being provided some ill-prepared meals of chicken of fish and some meals prepared by non-believers during Ramadan in 2011 substantially burdened plaintiff's right to freely practice his Muslim faith. The allegations allege no more than what has often in this Circuit been referred to as a *de minimus* burden on plaintiff's free exercise rights. See *Brown*, 2010 WL 6428251, at *15-16 (collecting cases); see also *Washington*, 2013 WL 4718693, at *5 ("Courts have generally held that incidents that are isolated, or few in number, involving a denial of religiously-mandated food, do not give rise to a First Amendment claim.") (citations omitted). Plaintiff only claims that he was denied double portions, that he was not provided oatmeal in his Sohoor bags and that some of the meals provided were provided by non-believers or were ill-prepared. The Ramadan Menu distributed by Meeker prior to the start of Ramadan noted that inmates

---

[5]"[T]he court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself." *Chance v. Armstrong*, 143 F.3d 698, 698 n.1 (2d Cir. 1998); see *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

would be provided one bag of Halal dates for consumption prior to dawn each day and that the daily rations of dates was five and that each bag of dates would contain 14 plus rations of dates with a few extra "which will last each participant a total of [14] dates." (Complaint, Exh. B.)

These allegations, in addition to alleging no more than a *de minimus* burden, if at all, on plaintiff's right to practice his Muslim faith during Ramadan, also fail to allege that the denial of double portions of dates or meals prepared properly and in a more pleasing manner was, in any way, a "substantial burden" on exercising plaintiff's faith. See *Salahuddin*, 467 F.3d at 274-75; *Washington*, 2013 WL 4718693, at *5-6.

Accordingly, the complaint fails to state a claim that plaintiff's right to freely practice his religion was denied but, according to the general rule in this Circuit, the Court will provide plaintiff the opportunity to file an amended complaint alleging that he was denied the right to freely practice his religion by Affy and Meeker only. See *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999) (Except in "unmistakably clear" cases, "it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition.")

### 3. Personal Involvement/Supervisory Liability

With respect to the Halal Meal claims against Fischer, Griffin, Bellamy and the unnamed IGRC Supervisor they must be dismissed with prejudice because plaintiff has not alleged that these defendants were personally involved in the

alleged denial of his First Amendment rights in relation to the provision or lack thereof of double portions, oatmeal and properly prepared Halal Meals. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000) (Leave to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it.") (citation omitted).

It is axiomatic that before a plaintiff can seek to impose liability against a state government official or employee under 42 U.S.C. § 1983, he must establish that the official or employee was personally involved in the alleged constitutional deprivation because the doctrine of respondeat superior does not apply to actions brought under § 1983. See, e.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). Thus, a defendant cannot be liable for damages for a constitutional violation merely because he occupies a position of authority or is in the chain of command of the prison hierarchy. See Colon v. Couglin, 58 F.3d 865, 873 (2d Cir.1995).[6]

Plaintiff's claims are brought against Fischer, former DOCCS Commissioner, based on the allegation that he had knowledge of the violations through "Executive Rounds" and the fact that grievances were appealed to his

---

[6] "Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009), there is still disagreement among district courts in this Circuit as to whether all of the [five] 'Colon factors' still apply. It is unclear whether *Iqbal* overrules or limits *Colon*, therefore, in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors." *Jackson v. Goord*, 2011 WL 4829850, at 9, n.21 (W.D.N.Y., Oct. 12, 2011) (CJS) (citations omitted)).

office. (Complaint, ¶ 9[2].[7]) However, as alleged in the complaint, Fischer was not part of rounds at Southport nor were any of the grievances appealed to him. These allegations would apply to Superintendent Griffin, not Fischer. The "WHEREFORE" Clause, alleges that Fischer failed to create proper policies used to govern Muslim Observances and failed to train his subordinates. (Id., ¶ 16.) Plaintiff's alleges that Bellamy, CORC Director, was responsible for all final decisions rendered by the Superintendent and had knowledge of the alleged violations through the appeal of Grievance I and II. (Id., ¶ 10 [2]). Griffin was the Superintendent who plaintiff alleges he told during Executive Rounds on September 1, 2011, that he had been denied his "Shawwal Fast" (id., ¶ 3) and who concurred in the IGRC's recommendation regarding Grievance I. (Complaint, Exh. J.)

Clearly, Fischer and Bellamy are named herein solely in their supervisory roles in DOCCS' hierarchy and are not alleged to have had any personal involvement in the alleged denial of Halal food and meals. Similarly, the allegations against Griffin and the IGRC Supervisor are subject to dismissal because it is well-established that the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement. See, e.g., Farrell v. Burke, 449 F.3d 470, 484 (2d Cir.2006) (citation omitted); James v. Poole, 2013

---

[7]The complaint contains separate paragraphs each numbered 8-11. The second paragraph is of each is denoted by "[2]."

WL 132492, at *7 (W.D.N.Y., January 09, 2013) ("Plaintiff attempts to establish personal involvement by Superintendent Poole and CORC Director Eagan by pointing to their roles in reviewing Plaintiffs grievances. Without more, this is insufficient to create personal involvement in Plaintiff's alleged constitutional violations.") Moreover, because there are no allegations that Griffin was directly involved in the alleged denial of double portions or properly prepared evening Halal Meals, the claims against him must be dismissed. Griffin's role as Superintendent is insufficient to establish his personal involvement in the alleged First Amendment violation. See *Washington*, 2013 WL 4718693, at *11.

## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, plaintiff's claims concerning the denial of congregate religious services and the claims against defendants Fischer, Bellamy, Griffin and IGRC Supervisor, in their entirety, are dismissed with prejudice. In addition, plaintiff's claims concerning the denial of and ill-prepared Halal Meals must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) unless he files an amended complaint which includes the necessary allegations regarding said claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) (quoting *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, plaintiff's amended complaint must include the allegations against Iman Affy and Meeker regarding only the claims that he was denied Halal Meals so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff is further forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). *See* 28 U.S.C. § 1915(g).

## ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff's claims regarding the denial of congregate religious services and his claims against Fischer, Bellamy, Griffin and IGRC Supervisor are dismissed with prejudice and the Clerk of the Court is directed to terminate defendants Fischer, Bellamy, Griffin and IGRC Supervisor as parties to this action;

FURTHER, that plaintiff is granted leave to file an amended complaint against Iman Affy and Meeker only regarding his claims of a denial of Halal Meals in 2011 as directed above by **November 22, 2013**;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **November 22, 2013**, the complaint shall be dismissed with prejudice without further order of the Court;

FURTHER, that if plaintiff has not filed an amended complaint by **November 22, 2013**, the Clerk of the Court is directed to close this case as dismissed with prejudice; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied.

*Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    IT IS SO ORDERED.

*/s/ Richard J. Arcara*
_____
HONORABLE RICHARD J. ARCARA
DISTRICT JUDGE
UNITED STATES DISTRICT COURT

Dated:     Oct. 24, 2013